[Crim. No. 6948.   Second Dist., Div. Two.   May 27, 1960.]

THE PEOPLE, Respondent, v. BETTY WOOTEN, Appellant.

G. Vernon Brumbaugh and Harold J. Ackerman for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General and A. Douglas MacRae, Deputy Attorney General, for Respondent.

RICHARDS, J. pro tem.\*—Convicted in a nonjury trial of violating Penal Code, section 337a, subdivision (1), (pool selling and bookmaking) and sentenced to the County Jail for 30 days, defendant appeals. Counts II (keeping a place for recording bets) and III (accepting a bet) were dismissed.

Appellant raises but two points: (1) insufficiency of evidence, and (2) error of the trial court in considering a probation report containing statements of a police officer that were speculative and conjectural.

Although the appeal purports to be from the judgment and from an order denying defendant's motion for new trial, no such motion was made and so much of the appeal should be dismissed.

The testimony of the police officers with the reasonable inferences which may be drawn therefrom is clearly adequate to support the conviction. On May 29, 1959, two officers went to a location where they could observe the front entrance of an apartment house at 2640 Catalina Street. During 25 minutes of surveillance they saw no one enter or leave. Then one officer went to a telephone and dialed a certain number which they had been advised was the number of the telephone in Apartment "1" of the above address. On the third dialing, after two busy signals, a female voice answered. The officer then asked in language used by horse bettors to place certain bets on races being run that day. Upon the officer's asking what the total amount was, the female voice said, "fourteen dollars." Testifying as an expert in bookmaking, the officer expressed the opinion that the conversation which he held would be that of a bettor placing bets. The officers then went to the front door of the apartment house. Receiving no response to a ring, they forced an entrance and then forced an entrance into Apartment "1" and observed the defendant in the bathroom with her hand on the handle of the toilet bowl and saw a sponge swirling in the water of the bowl, which they retrieved. Thereafter a large piece of paper ash was found on top of an open burner of the kitchen stove.

\*Assigned by Chairman of Judicial Council.

This ash was partly decipherable and was a part of a published scratch sheet of that day's horse races. No other persons were present in the apartment except the defendant and the officers and there was no rear exit thereto.

The top of a gray end table with a plastic finish was wet with a trace of abrasive powder, and on the end of the table was a telephone. The officer called a policewoman and requested her to dial the number the officer had first called before making entry. He hung up the phone and it immediately thereafter rang and was the policewoman that he had just requested to call him back. Shortly thereafter the phone rang several times and on each occasion the caller sought to place bets on horse races. The officer testified that in his opinion the sponge, the scratch sheet, the table surface, and the telephone were indispensable items in bookmaking as it relates to a relay spot.

One would indeed have to be naive to infer that the scouring of the plastic surfaced end table; the disposal of the sponge in the toilet bowl and the incineration of the current scratch sheet on top of the kitchen stove was no more than an outburst of spring housecleaning.

The other claimed error is equally untenable. The probation report refers to statements of a police officer that the defendant had been engaged in bookmaking for over a year, that she had been previously arrested for bookmaking and that she was not operating a relay spot. The probation officer's evaluation refers to appellant's third arrest and stated that it was apparent she had been involved in bookmaking for some time and recommended denial of probation.

The claim of error is that the trial judge was undoubtedly influenced by the inadmissible and prejudicial statements in the probation report. Appellant cites *People* v. *Fenton,* 141 Cal.App.2d 357 [296 P.2d 829], where the court said that it would appear that the recommendation against probation was influenced by exaggerated statements as to the extent of the defendant's thefts of gasoline. The trial judge here was the trial judge in Fenton, and there, as here, expressly discounted the exaggerated statements in denying probation. In Fenton the reviewing court rejected the contention of influence by the statements in the probation report. Penal Code, section 1203, requires the probation officer to make an investigation of the circumstances surrounding the offense and of the prior record and history of the defendant and to report the facts found with his recommendation.

The grant or denial of probation, if allowable, is discretionary. A statement from Fenton is apposite (p. 363): "Moreover, they assume they would have been granted probation if there had been no evidence of their guilt of offenses other than the ones they admitted. The record contains no statement of the court tending to support that assumption." Likewise here there is nothing to indicate that the court denied probation by reason of any conjectural and hearsay statements in the probation report.

The judgment is affirmed and the appeal from a nonexistent order denying motion for new trial dismissed.

Fox, P. J., and Ashburn, J., concurred.